**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE JAMES MADISON PROJECT<br>1250 Connecticut Avenue, NW<br>Suite 200<br>Washington, D.C. 20036<br><br>and<br><br>SHANE HARRIS<br>The Daily Beast<br>1150 17th Street, NW<br>Suite 302<br>Washington, DC 20036<br><br>  Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue, NW<br>Washington, D.C. 20530<br><br>and<br><br>DEPARTMENT OF DEFENSE<br>1000 Defense Pentagon<br>Washington, D.C. 20301-1000<br><br>and<br><br>CENTRAL INTELLIGENCE AGENCY<br>Washington, D.C. 20505<br><br>  Defendants. | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Civil Action No. 16-514 |

**COMPLAINT**

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq., as amended, for the disclosure of agency records improperly withheld from plaintiffs The James Madison Project and Shane Harris by the defendants Department of Justice,

Department of Defense, and the Central Intelligence Agency (as well as their subordinate entities).

## JURISDICTION

1. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the defendants pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

## VENUE

2. Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff The James Madison Project ("JMP") is a non-partisan organization established in 1998 to promote government accountability and the reduction of secrecy, as well as educating the public on issues relating to intelligence and national security.

4. Plaintiff Shane Harris ("Harris") currently serves as a Senior Correspondent for The Daily Beast, covering national security, intelligence and cyber security topics. He received the New York Public Library's Helen Bernstein Book Award for his book, The Watchers, and was the 2010 winner of the 2010 Gerald R. Ford Prize for Distinguished Reporting on National Defense. His most recent book is entitled "@War: The rise of the Military-Internet Complex."

5. Defendant Department of Justice ("DOJ") is an agency within the meaning of 5 U.S.C. § 552 (e), and is in possession and/or control of the records requested by the plaintiffs which are the subject of this action. DOJ controls – and consequently serves as the proper party defendant for litigation purposes for – the Executive Office for the U.S. Attorneys ("EOUSA") and the Federal Bureau of Investigation ("FBI").

6. Defendant Department of Defense ("DOD") is an agency within the meaning of 5 U.S.C. § 552 (e), and is in possession and/or control of the records requested by the plaintiffs which are the subject of this action. DOD controls – and consequently serves as the proper party defendant for litigation purposes for – the Department of the Army ("Army") and the Office of the Secretary of Defense ("OSD").

7. Defendant Central Intelligence Agency ("CIA") is an agency within the meaning of 5 U.S.C. § 552 (e), and is in possession and/or control of the records requested by the plaintiffs which are the subject of this action.

## BACKGROUND

8. This FOIA lawsuit seeks various records concerning former CIA Director General David H. Petraeus ("General Petraeus") and the criminal/intelligence investigation into his activities.

9. General Petraeus is a retired Army officer, having served in uniform for 37 years until he retired from the Army on August 31, 2011. *http://www.army.mil/ article/64704/* (last accessed February 2, 2016). He was sworn in as the Director of the CIA on September 6, 2011, *https://www.cia.gov/news-information/press-releases-statements/press-release-2011/david-h.-petraeus-takes-helm-as-director-of-the-central-intelligence-agency.html* (last accessed February 2, 2016), and served in that capacity until his resignation on November 9, 2012. *http://www.daily mail.co.uk/news/article-2230697/David-Petraeus-resigns-head-CIA.html* (last accessed February 2, 2016).

10. On March 3, 2015, the Department of Justice ("DOJ") announced that General Petraeus had agreed to plead guilty to a charge of unauthorized removal and retention of classified information. *http://www.msn.com/en-us/news/crime/former-cia-director-*

3

*petraeus-pleads-guilty-to-federal-charge-doj/ar-BBibqYX* (last accessed February 2, 2016). On April 23, 2015, General Petraeus was sentenced to two years' probation, plus a fine of $100,000. *http://www.nytimes.com /2015/04/24/us/david-petraeus-to-be-sentenced-in-leak-investigation.html?_r=0* (last accessed February 2, 2016). On January 30, 2016, the Department of Defense notified Congress that Secretary of Defense Ashton B. Carter ("Secretary Carter") had decided not to impose any further punishment upon General Petraeus. *https://www.washingtonpost.com/world/national-security/pentagon-decides-no-further-punishment-warranted-for-petraeus/2016/01/30/b503348e -c767-11e5-8965-0607e0e265ce _story.html* (last accessed February 2, 2016).

## **COUNT ONE – FBI**

11. By letter dated February 5, 2016, the plaintiffs, JMP and Mr. Harris (referred to jointly as "JMP"), submitted to the FBI a FOIA request. The FOIA request specifically sought copies of records, including cross-references, pertaining to General Petraeus.

12. JMP indicated that the FBI could limit the scope of its search to the following categories of information:

   1) Records memorializing the entirety of the FBI's investigation into General Petraeus' actions that resulted in his eventual guilty plea, including but not limited to his alleged unauthorized removal and retention of classified information and alleged false statements to the FBI;

   2) Any "damage" or "harm" assessments made regarding the impact that General Petraeus' actions which resulted in his guilty plea, including but not limited to his alleged unauthorized removal and retention of classified information, have had upon the national security of the United States;

   3) Any documentation memorializing legal analyses of the viability of recommending legal action (whether criminal or civil) against General Petraeus as a result of his actions, including but not limited to his alleged unauthorized removal and retention of classified information and alleged false statements to the FBI;

4) Any documentation memorializing discussions between the FBI and the Army regarding the viability of possible legal or administrative action against General Petraeus as a result of his actions, including but not limited to his alleged unauthorized removal and retention of classified information and alleged false statements to the FBI;

5) Any documentation memorializing discussions between the FBI and the Office of the Secretary of Defense regarding the viability of possible legal or administrative action against General Petraeus as a result of his actions, including but not limited to his alleged unauthorized removal and retention of classified information and alleged false statements to the FBI; and

6) Any documentation memorializing discussions between the FBI and the CIA regarding the viability of possible legal or administrative action against General Petraeus as a result of his actions, including but not limited to his alleged unauthorized removal and retention of classified information and alleged false statements to the FBI.

JMP clarified that the FBI could limit the timeframe of its search from January 1, 2011 up until February 1, 2016. JMP further clarified that the scope of the FBI's search should not be limited to FBI-originated records. JMP also requested that responsive records be produced in electronic form.

13. In the FOIA request, JMP pre-emptively waived any objection to the redaction of the names of any U.S. Government officials below a GS-14 position or whom otherwise were not acting in a supervisory position. JMP similarly waived any objection to redactions of the names of any U.S. Government contractors in a position of authority similar to that of a GS-13 series civilian employee or below.

14. In terms of all other third parties (aside from General Petraeus) who work for the U.S. Government and whose names appear in records responsive to this request, JMP explained in detail that the privacy interests of those individuals have been diminished by virtue of their involvement in one or more of the U.S. Government functions described

above as falling within the scope of the FOIA request. In terms of General Petraeus himself, JMP similarly described in detail the basis for its conclusion that the public interest in records responsive to the FOIA request outweighed General Petraeus' categorical privacy interests. Relying upon the public interest aspect outlined regarding third party privacy interests, JMP stated that it was also seeking a waiver of fees or, at a minimum, a reduction in fees.

15. By letter dated March 4, 2016, the FBI acknowledged receipt of JMP's FOIA request and assigned it Request Number 1345044-000.

16. To date, no substantive response has been received by JMP from the FBI. JMP has constructively exhausted all required administrative remedies.

17. JMP has a legal right under the FOIA to obtain the information it seeks, and there is no legal basis for the denial by the FBI of said right.

## COUNT TWO – EOUSA

18. By letter dated February 5, 2016, JMP submitted to the EOUSA a FOIA request. The FOIA request specifically sought copies of records, including cross-references, pertaining to General Petraeus.

19. JMP indicated that the EOUSA could limit the scope of its search to the following categories of information:

   1) Records memorializing the entirety of the EOUSA's investigation into General Petraeus' actions that resulted in his eventual guilty plea, including but not limited to his alleged unauthorized removal and retention of classified information and alleged false statements to the Federal Bureau of Investigation ("FBI");

2) Any "damage" or "harm" assessments made regarding the impact that General Petraeus' actions which resulted in his guilty plea, including but not limited to his alleged unauthorized removal and retention of classified information, have had upon the national security of the United States; and

3) Any documentation memorializing legal analyses of the viability of taking legal action (whether criminal or civil) against General Petraeus as a result of his actions, including but not limited to his alleged unauthorized removal and retention of classified information and alleged false statements to the FBI.

JMP clarified that the EOUSA could limit the timeframe of its search from January 1, 2011 up until February 5, 2016. JMP further clarified that the scope of the EOUSA's search should not be limited to EOUSA-originated records. JMP also requested that responsive records be produced in electronic form.

20. JMP realleges paragraphs 13-14, as JMP's request to the EOUSA contained similar language to that contained in the FBI request addressing privacy concerns and JMP's request for a fee waiver.

21. To date, no substantive response has been received by JMP from the EOUSA. JMP has constructively exhausted all required administrative remedies.

22. JMP has a legal right under the FOIA to obtain the information it seeks, and there is no legal basis for the denial by the EOUSA of said right.

**COUNT THREE - ARMY**

23. By letter dated February 5, 2016, JMP submitted to the Army a FOIA request. The FOIA request specifically sought copies of records, including cross-references, pertaining to General Petraeus.

24. JMP indicated that the Army could limit the scope of its search to the following categories of information:

1) Records memorializing the entirety of the Army's investigation into General Petraeus' actions that resulted in his eventual guilty plea, including but not limited to his alleged unauthorized removal and retention of classified information and alleged false statements to the Federal Bureau of Investigation ("FBI");

2) Any "damage" or "harm" assessments made regarding the impact that General Petraeus' actions which resulted in his guilty plea, including but not limited to his alleged unauthorized removal and retention of classified information, have had upon the national security of the United States;

3) Any documentation memorializing legal analyses of the viability of taking legal or administrative action (whether criminal or civil) against General Petraeus as a result of his actions, including but not limited to his alleged unauthorized removal and retention of classified information and alleged false statements to the FBI;

4) Any documentation memorializing discussions between the Army and the Office of the Secretary of Defense regarding the viability of possible legal or administrative action against General Petraeus as a result of his actions, including but not limited to his alleged unauthorized removal and retention of classified information and alleged false statements to the FBI;

5) Any documentation memorializing discussions between the Army and the CIA regarding the viability of possible legal or administrative action against General Petraeus as a result of his actions, including but not limited to his alleged unauthorized removal and retention of classified information and alleged false statements to the FBI; and

6) Any documentation memorializing discussions between the Army and the FBI regarding the viability of possible legal or administrative action against General Petraeus as a result of his actions, including but not limited to his alleged unauthorized removal and retention of classified information and alleged false statements to the FBI.

JMP clarified that the Army could limit the timeframe of its search from January 1, 2011 up until February 5, 2016. JMP further clarified that the scope of the Army's search should not be limited to Army-originated records. JMP also requested that responsive records be produced in electronic form.

25. JMP realleges paragraphs 13-14, as JMP's request to the Army contained similar language to that contained in the FBI request addressing privacy concerns and JMP's request for a fee waiver.

26. To date, no substantive response has been received by JMP from the Army. JMP has constructively exhausted all required administrative remedies.

27. JMP has a legal right under the FOIA to obtain the information it seeks, and there is no legal basis for the denial by the Army of said right.

## COUNT FOUR - OSD

28. On February 16, 2016, JMP submitted to the OSD a FOIA request. The FOIA request specifically sought copies of records, including cross-references, pertaining to General Petraeus.

29. JMP indicated that the OSD could limit the scope of its search to the following categories of information:

   1) Records memorializing the entirety of the OSD's investigation into General Petraeus' actions that resulted in his eventual guilty plea, including but not limited to his alleged unauthorized removal and retention of classified information and alleged false statements to the Federal Bureau of Investigation ("FBI");

   2) Any "damage" or "harm" assessments made regarding the impact that General Petraeus' actions which resulted in his guilty plea, including but not limited to his alleged unauthorized removal and retention of classified information, have had upon the national security of the United States;

   3) Any documentation memorializing legal analyses of the viability of taking legal or administrative action (whether criminal or civil) against General Petraeus as a result of his actions, including but not limited to his alleged unauthorized removal and retention of classified information and alleged false statements to the FBI;

4) Any documentation memorializing discussions between the OSD and the Army regarding the viability of possible legal or administrative action against General Petraeus as a result of his actions, including but not limited to his alleged unauthorized removal and retention of classified information and alleged false statements to the FBI;

5) Any documentation memorializing discussions between the OSD and the CIA regarding the viability of possible legal or administrative action against General Petraeus as a result of his actions, including but not limited to his alleged unauthorized removal and retention of classified information and alleged false statements to the FBI; and

6) Any documentation memorializing discussions between the OSD and the FBI regarding the viability of possible legal or administrative action against General Petraeus as a result of his actions, including but not limited to his alleged unauthorized removal and retention of classified information and alleged false statements to the FBI.

JMP clarified that the NSA could limit the timeframe of its search from January 1, 2011 up until February 1, 2016. JMP further clarified that the scope of the OSD's search should not be limited to OSD-originated records. JMP also requested that responsive records be produced in electronic form.

30. JMP realleges paragraphs 13-14, as JMP's request to the OSD contained similar language to that contained in the FBI request addressing privacy concerns and JMP's request for a fee waiver.

31. By e-mail dated March 7, 2016, OSD informed JMP that the request had been received and assigned Case No. 16-F-0593. To date, no substantive response has been received by JMP from the OSD. JMP has constructively exhausted all required administrative remedies.

32. JMP has a legal right under the FOIA to obtain the information it seeks, and there is no legal basis for the denial by the OSD of said right.

## COUNT FIVE - CIA

33. By letter dated February 5, 2016, JMP submitted to the CIA a FOIA request. The FOIA request specifically sought copies of records, including cross-references, pertaining to General Petraeus.

34. JMP indicated that the CIA could limit the scope of its search to the following categories of information:

1) Records memorializing the entirety of the CIA's investigation into General Petraeus' actions that resulted in his eventual guilty plea, including but not limited to his alleged unauthorized removal and retention of classified information and alleged false statements to the Federal Bureau of Investigation ("FBI");

2) Any "damage" or "harm" assessments made regarding the impact that General Petraeus' actions which resulted in his guilty plea, including but not limited to his alleged unauthorized removal and retention of classified information, have had upon the national security of the United States;

3) Any documentation memorializing legal analyses of the viability of recommending legal action (whether criminal or civil) against General Petraeus as a result of his actions, including but not limited to his alleged unauthorized removal and retention of classified information and alleged false statements to the FBI;

4) Any documentation memorializing discussions between the CIA and the Army regarding the viability of possible legal or administrative action against General Petraeus as a result of his actions, including but not limited to his alleged unauthorized removal and retention of classified information and alleged false statements to the FBI;

5) Any documentation memorializing discussions between the CIA and the Office of the Secretary of Defense regarding the viability of possible legal or administrative action against General Petraeus as a result of his actions, including but not limited to his alleged unauthorized removal and retention of classified information and alleged false statements to the FBI; and

6) Any documentation memorializing discussions between the CIA and the FBI regarding the viability of possible legal or administrative action against General Petraeus as a result of his actions, including but not limited to his

alleged unauthorized removal and retention of classified information and alleged false statements to the FBI.

JMP clarified that the CIA could limit the timeframe of its search from January 1, 2011 up until February 5, 2016. JMP further clarified that the scope of the CIA's search should not be limited to CIA-originated records. JMP also requested that responsive records be produced in electronic form.

35. JMP realleges paragraphs 13-14, as JMP's request to the CIA contained similar language to that contained in the FBI request addressing privacy concerns and JMP's request for a fee waiver.

36. By letter dated March 7, 2016, CIA acknowledged receipt of JMP's FOIA request and assigned it Case Number F-2016-01088.

37. To date, no substantive response has been received by JMP from the CIA. JMP has constructively exhausted all required administrative remedies.

38. JMP has a legal right under the FOIA to obtain the information it seeks, and there is no legal basis for the denial by the CIA of said right.

WHEREFORE, plaintiffs The James Madison Project and Shane Harris pray that this Court:

(1) Orders the defendant federal agencies to disclose the requested records in their entirety and make copies promptly available to the plaintiffs;

(2) Award reasonable costs and attorney's fees as provided in 5 U.S.C. § 552 (a)(4)(E) and/or 28 U.S.C. § 2412 (d);

(3) expedite this action in every way pursuant to 28 U.S.C. § 1657 (a); and

(4) grant such other relief as the Court may deem just and proper.

Date:   March 18, 2016

                        Respectfully submitted,

                             /s/
                        _____

                        Bradley P. Moss, Esq.
                        D.C. Bar #975905
                        Mark S. Zaid, Esq.
                        D.C. Bar #440532
                        Mark S. Zaid, P.C.
                        1250 Connecticut Avenue, N.W., Ste. 200
                        Washington, D.C. 20036
                        (202) 454-2809
                        (202) 330-5610 fax
                        Brad@MarkZaid.com
                        Mark@MarkZaid.com

                        Attorneys for Plaintiffs